UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| TRINIA M. CONRAD, | ) | No. CV-04-5116-CI |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART |
| v. | ) | PLAINTIFF'S MOTION FOR SUMMARY |
| | ) | JUDGMENT AND REMANDING FOR |
| JO ANNE B. BARNHART, | ) | ADDITIONAL PROCEEDINGS |
| Commissioner of Social | ) | PURSUANT TO 42 U.S.C. § 405(G) |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 17, 21) submitted for disposition without oral argument on August 15, 2005. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Jeffrey H. Baird represents Defendant. The parties consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and **REMANDS** for additional proceedings pursuant to 42 U.S.C. § 405(g).

Plaintiff, who was 37-years-old at the time of the administrative decision, protectively filed a second[1] application for

---

[1]Plaintiff initially filed an application for SSI benefits on January 7, 1997. (Tr. at 53-56.) The application was denied

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)  - 1

1  Supplemental Security Income (SSI) benefits on August 21, 2001,
2  alleging onset as of February 1, 2001, due to prolapsed slipped disc
3  in her back causing constant numbness in the right leg with constant
4  pain, as well as other physical and mental impairments.  (Tr. at
5  21.)  Plaintiff attended school for 13 years and had past employment
6  as a cashier / checker.  Following a denial of benefits and
7  reconsideration, a hearing was held before ALJ Mary B. Reed (ALJ).
8  The ALJ denied benefits after concluding Plaintiff was able to
9  perform her past relevant work.   Review was denied by the Appeals
10 Council. This appeal followed.  Jurisdiction is appropriate pursuant
11 to 42 U.S.C. § 405(g).

12                    **ADMINISTRATIVE DECISION**

13     ALJ Reed found Plaintiff previously had applied for SSI
14 benefits which were denied on May 28, 1998, after findings were made
15 by ALJ Jensen that Plaintiff was able to perform sedentary work with
16 some additional limitations.  (Tr. at 21.)  ALJ Reed, in the instant
17 action, found there was no basis on which to reopen that claim and
18 that finding has not been challenged by Plaintiff.  (Tr. at 20.)
19 Thus, the relevant time period at issue is from August 21, 2001, the
20 date of the current SSI application to February 9, 2004, the date of
21 ALJ Reed's decision.

22     The ALJ concluded Plaintiff had not engaged in substantial
23 gainful activity and suffered from severe impairments including

24
25
26 _____

27 initially, on reconsideration, and, following an administrative
28 hearing, that rejection was affirmed on May 28, 1998. (Tr. at 442.)

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(G)  - 2

status post foot surgeries, degenerative disc disease, obesity[2], and drug seeking behavior. (Tr. at 27.) Those impairments were not found to meet the Listings. The ALJ concluded Plaintiff's testimony was not fully credible and that she retained the residual capacity to perform past relevant work as a checker / cashier. (Tr. at 32.) Thus, the ALJ concluded Plaintiff was not disabled.

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when she failed to (1) consider the combined effects of Plaintiff's physical and mental impairments and (2) properly conduct a step four analysis.[3]

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,

[2]Plaintiff was 5' tall and weighed 194 pounds in April 2003.

[3]In her Reply brief, Plaintiff raises the additional issue of failure to properly reject the opinions and diagnoses of treating physicians as to severe abdominal pain. (Ct. Rec. 23-1 at 2.) Because this claim was not raised in her opening brief and because it appears the references to abdominal pain pre-date the current application, the argument will not be considered. *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G) - 3

1   1097 (9th Cir. 1999). Substantial evidence is defined as
    being more than a mere scintilla, but less than a
2   preponderance. *Id.* at 1098. Put another way, substantial
    evidence is such relevant evidence as a reasonable mind
3   might accept as adequate to support a conclusion.
    *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
4   evidence is susceptible to more than one rational
    interpretation, the court may not substitute its judgment
5   for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
    *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599
6   (9th Cir. 1999).

7       The ALJ is responsible for determining credibility,
    resolving conflicts in medical testimony, and resolving
8   ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
    Cir. 1995). The ALJ's determinations of law are reviewed
9   *de novo*, although deference is owed to a reasonable
    construction of the applicable statutes. *McNatt v. Apfel*,
10  201 F.3d 1084, 1087 (9th Cir. 2000).

11                    **SEQUENTIAL PROCESS**

12      Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the

13  requirements necessary to establish disability:

14      Under the Social Security Act, individuals who are
    "under a disability" are eligible to receive benefits. 42
15  U.S.C. § 423(a)(1)(D). A "disability" is defined as "any
    medically determinable physical or mental impairment"
16  which prevents one from engaging "in any substantial
    gainful activity" and is expected to result in death or
17  last "for a continuous period of not less than 12 months."
    42 U.S.C. § 423(d)(1)(A). Such an impairment must result
18  from "anatomical, physiological, or psychological
    abnormalities which are demonstrable by medically
19  acceptable clinical and laboratory diagnostic techniques."
    42 U.S.C. § 423(d)(3). The Act also provides that a
20  claimant will be eligible for benefits only if his
    impairments "are of such severity that he is not only
21  unable to do his previous work but cannot, considering his
    age, education and work experience, engage in any other
22  kind of substantial gainful work which exists in the
    national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus,
23  the definition of disability consists of both medical and
    vocational components.
24
        In evaluating whether a claimant suffers from a
25  disability, an ALJ must apply a five-step sequential
    inquiry addressing both components of the definition,
26  until a question is answered affirmatively or negatively
    in such a way that an ultimate determination can be made.
27  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The
    claimant bears the burden of proving that [s]he is
28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(G) - 4

1  disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
2  1999).  This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§
3  404.1512(a)-(b), 404.1513(d)).

4  **ANALYSIS**

5  1.  Combination of Impairments

6  Plaintiff first contends the ALJ did not properly consider her
7  impairments in combination, noting her treating physician opined in
8  February 2003 that the combined effects of low back pain, left knee
9  pain, migraine headaches, and menstrual cramps, as well as pain
10  medication and anti-migraine medication, would cause Plaintiff to
11  lie down during the day and that she would likely miss an average of
12  three days of work per month.  (Tr. at 30.)  Plaintiff also contends
13  the ALJ failed to consider all of her mental impairments, including
14  anxiety and depression, as part of her residual capacity even though
15  those impairments did not meet step two requirements.

16  Defendant contends the ALJ correctly assessed Plaintiff's
17  ability to perform light work, relying on the objective testing and
18  findings by Dr. James E. Damon dated April 10, 2003.  Dr. Damon
19  concluded Plaintiff could perform light work with alternate sitting
20  and standing.  (Tr. at 733-35.)  Because his opinion was based on
21  objective tests and independent clinical findings (Tr. at 733-735),
22  it constitutes substantial evidence.  *Andrews v. Shalala*, 53 F.3d
23  1035, 1041 (9th Cir. 1995).

24  The ALJ rejected Dr. Opara's conclusion Plaintiff was disabled
25  because she found it to be inconsistent with other evidence that
26  Plaintiff had been normal neurologically, did not have daily
27  headaches, and had a history of overuse and/or misuse of pain

28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(G)  - 5

1  medication.  (Tr. at 30.)  The ALJ also noted Dr. Opara opined in

2  December 2002 that Plaintiff could perform light work.  (Tr. at 708-

3  711.) Additionally, on other occasions, Dr. Opara noted no objective

4  neurological deficits.  (Tr. at 688 (August 2002), 696 (December

5  2002).)

6      The ALJ also relied on Dr. Pitkethly's findings.  After

7  referral by Dr. Opara for evaluation of her back condition,

8  neurologist Dr. Pitkethly reported in November 2001 that Plaintiff's

9  subjective symptoms did not correlate with the MRI or exam.

10  Plaintiff stood erect, with normal lordotic curve.  There was no

11  paravertebral spasm and no radicular symptoms to lower extremities.

12  She could tandem walk and walk on heels and toes.  She had good

13  strength in both lower extremities and pedal pulses were okay.  Deep

14  tendon reflexes in upper and lower extremities were bilaterally

15  equal.  Dr. Pitkethly diagnosed herniated disc T12-L1, probably not

16  symptomatic as the pain complaints were well below that location; he

17  recommended a comprehensive back exercise program and well-fitted

18  back brace.  (Tr. at 725-726.)

19      Finally, Dr. James Damon in April 2003 examined Plaintiff and

20  found her in no apparent distress.  She exhibited a normal erect

21  posture, normal gait, could heel and toe walk, perform a half squat,

22  had normal spinal alignment, and was able to get off and on the

23  examination table without difficulty.  There was no back spasm, 2+

24  ankle and knee jerks, intact sensation and equal calf and thigh

25  measurements.  Plaintiff put forth poor effort when he tested her

26  muscle power.  There was minimal crepitation in the right knee and

27  the left knee was totally asymptomatic.  (Tr. at 732.)  Dr. Damon

28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(G) - 6

concluded Plaintiff could frequently lift 25 pounds (as demonstrated by her ability to provide child care for her two toddlers), her grip was normal; he also noted the probability of some functional overlay with respect to her reported symptoms. (Tr. at 732-733.) Assessing Plaintiff's residual capacity, Dr. Damon concluded she could perform light work, stand or walk for six out of eight hours, did not have push/pull limitations, and would have occasional postural limitations. Dr. Damon did not comment or evaluate Plaintiff with respect to her complaints of chronic migraine headache pain, evidenced by medical notes made during the relevant time period.

The ALJ rejected impairment caused by the migraine headache history, noting simply the headaches did not occur on a daily basis. (Tr. at 30.) The medical record indicates Plaintiff reported a history of headaches since age 12; Dr. Falcon in January 2000 commented Plaintiff was able to control the severity of the headaches 60% of the time by the application of cold compresses. (Tr. at 571.) At that time, the use of Imitrex was not possible because Plaintiff was still nursing her infant. (Tr. at 574.) Dr. Falcon's recommendation was to withdraw the nursing so Imitrex would be available.

From October 2000 - June 2001, Plaintiff reported regularly to her treating physician for treatment of headaches secondary to sinusitis and dental treatment. (Tr. at 604, 606, 616, 618, 619, 625.) Phenergan was prescribed because Plaintiff continued to nurse her infant. She was treated again for headache in November 2001 associated with sinusitis; Tylenol was provided. (Tr. at 637.) Because of continuing headache problems, she was referred in

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G) - 7

February 2002 for x-ray of her sinuses, but there was no evidence of infection.  (Tr. at 697.)

In June, July, August, September, October, December 2002, and January 2003, medical notes indicate migraine headaches were sufficiently severe to require treatment with 10 mg Nubain IM.  (Tr. at 580, 665, 668, 671, 681, 685, 688, 689, 691, 696, 719.)  There is no evidence to contradict this treatment history or a need for it. The ALJ's rejection of the evidence of migraine headache simply because they did not occur daily, particularly in light of Dr. Obara's comment that medication to control the pain would cause sedation (Tr. at 727), is not sufficient; rather, the ALJ is required to make findings whether the treatment controlled the severity and frequency of the headaches so that they would have no non-exertional impact on her residual capacity.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Beecher v. Heckler*, 756 F.2d 693, 694 (9th Cir. 1985) (The ALJ is required to consider the combination of Plaintiff's impairments when assessing her residual capacity).

There is also some inference the ALJ rejected the headaches as being severe because of overuse or misuse of prescription drugs; however, a review of the record indicates the object of that abuse or misuse was Percocet.  (Tr. at 629, 631, 633.)  There is no connection in the medical notes that Percocet was used for relief of migraine pain; rather, it appears to have used for control of back pain. (Tr. at 633.)  The medical notes indicate Phenergan, Imitrex and Nubain appear to have been the appropriate medications used for control and relief of Plaintiff's migraine headaches.  (Tr. at 580,

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)  - 8

572.)

2.  Mental Impairments

Plaintiff contends the ALJ should have included her mental impairments, including depression and anxiety, in the residual capacity assessment.  The record indicates Plaintiff has been treated with Wellbutrin for depression since the birth of her child and because of that, she is no longer tearful.  (Tr. at 616, 619.) There is no other evidence of mental health impairment or treatment except for a passing reference to counseling for depression.  (Tr. at 782.) A residual capacity assessment by Dr. Brown in October 2001, indicated depression nos, with only mild limitations.  (Tr. at 588.)  Other records indicate Plaintiff was doing well following post partum depression in March 2001.  (Tr. at 600.)  Although Dr. Gillespie noted some anxiety, he followed that with the comment: "I don't see anything here alarming."  (Tr. at 717.)  Upon remand, if warranted, the ALJ shall consider the need for a thorough psychological evaluation to explore issues of depression, anxiety, and functional overlay associated with Plaintiff's complaints. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **GRANTED;** the matter is **REMANDED** for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 21)** is **DENIED.**

3.  Any application for attorney fees shall be filed by separate Motion.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)  - 9

1     4.    The District Court Executive is directed to file this

2   Order and provide a copy to counsel for Plaintiff and Defendant.

3   The file shall be **CLOSED** and judgment entered for Plaintiff.

4     DATED August 30, 2005.

5

6

7            s/ CYNTHIA IMBROGNO
          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42
U.S.C. § 405(G)  - 10